## Case No. 11,570.

### RANSDALE v. GROVE.

### [4 McLean, 282.] [1]

Circuit Court, D. Ohio.　July Term, 1847.

LOST INSTRUMENTS—PROOF OF LOSS — PRESUMPTIONS—PAYMENT OF MORTGAGE—EJECTMENT—LIMITATION OF ACTIONS.

1. To admit parol proof of the contents of a deed, the original must be proved to have been lost or destroyed. That the original was lost in crossing a river, or that it is in the hands of certain purchasers, is not sufficient.

2. The statute of limitations does not run against non-residents.

3. A deed may be presumed from a long possession, and under circumstances favorable to such a presumption. Such presumption can only be drawn, when it would seem naturally to arise from the facts in the case. But it may be rebutted.

4. The presumption of payment of a mortgage arises, where no interest on it has been paid for twenty years. But the relation of vendor and vendee must exist to authorize such a presumption.

5. Where a purchase has been made of one who had no title, it would be difficult to presume a title from a stranger.

[This was an action in ejectment by the lessee of Ransdale against Jacob Grove.]

Massie & Stanbery, for plaintiff.

Corwin & Thompson, for defendant.

OPINION OF THE COURT. This is an ejectment for the recovery of land in Highland county. The plaintiff gave in evidence a patent from the United States, for the land in controversy. Marriage of some of the plaintiffs to the heirs admitted. The defendant gave in evidence a copy of a survey of the land, dated the 16th of June, 1797, recorded for Ransdale, by John O'Bannon. And also, a certificate from the land office as to the procurement of the patent; a receipt for tax on the land, in 1801, paid by Macker, for Ransdale; other receipts of a similar character were before the jury.

Thomas Saunders, a witness, has lived in Highland county since the fall of 1805–06. Is acquainted with the land in controversy. He lives six miles from it. Has been a county surveyor. He was acquainted with James Macker, and never heard of any one claiming the land but Macker. Linn acted as his agent. Col. Pope also acted as the agent of Macker; and in 1806, Macker and his agents sold the land to the defendant and others. In 1824, the residue of the land was sold by Green, as agent of Macker. Jonas Green, in his deposition states, that having possession of the patent, he either left it with one of the purchasers or lost it in crossing the Rappahannock river, in Virginia. On this evidence of the loss of the patent, the defendant's counsel moved the court to permit parol evidence of its contents.

But THE COURT overruled the motion,

1 [Reported by Hon. John McLean, Circuit Justice.]

and said the evidence of the loss of the patent was not satisfactory. Its loss, indeed, was not proved. The witness either left it with one of the purchasers, or lost it in the river. Now, it does not appear but that one of the purchasers with whom the paper was left, may still have it in possession. The purchasers are numerous, but not so numerous that they can not be examined as to this fact. And until that shall be done, there is no proof of the loss of the paper.

It may be observed that all patents issued by the general government, are recorded at Washington. And if no record can be found there of the patent referred to, it is strong evidence against the existence of such a paper. Several of the witnesses speak of the lands in question as having been purchased twenty-five or thirty years ago.

A copy of the warrant issued to Thomas Ransdale for 4,000 acres, on which the location was made, was given in evidence without objection. And the counsel agree that the location was made by O'Bannon, 2,000 acres in Ohio, and 2,000 acres in Kentucky, in 1787. A copy of the patent to Thomas Ransdale, from the governor of Kentucky, was read. It was proved that the locator of such warrants received, usually, as his compensation, one-third of the land—sometimes one-half, or one-fourth. Hord, a land speculator, set up a claim to this land in 1843; but it seems he had no satisfactory evidence of title. The demise in the declaration was laid December 1st, 1843. One of the depositions proves that one of the lessors died in 1843, and objection was made that that defeated the plaintiff's action. But THE COURT remarked, if the effect would be as suggested, the deposition did not show that the death took place before the demise laid; it may have occurred afterward. It is admitted that Macker had no title, and, of course, could convey none to the purchasers. Nor can the statute of limitations apply, as the lessors of the plaintiff are all nonresidents.

The only ground of defense that remains for the defendant is, the lapse of time since they entered into the possession of the land, from which it is contended a deed may be presumed. Such presumption, under certain circumstances, may be admitted. There are some things which may be presumed as facts, from the lapse of time, aided by circumstances. As where there has been no payment of interest on a mortgage, and no circumstances appearing to explain the neglect, the mortgagor can not redeem. Hughes v. Edwards, 9 Wheat. [22 U. S.] 489. The payment of a bond may be presumed after the lapse of twenty years, exclusive of disability of the holder to sue. Dunlap v. Ball, 2 Cranch [6 U. S.] 180. After a long possession in severalty, a deed of partition among tenants in common may be presumed. Hepburn v. Auld, 5 Cranch [9 U. S.] 262. Presumption of a grant, arising from lapse of time, is applied to corporeal as well as to incorporeal hereditaments. But it may

be encountered and rebutted by contrary presumptions; and can never arise where all the circumstances are entirely consistent with the non-existence of a grant. A posteriori, they can never arise where the claim is of such a nature as is at variance with the supposition of a grant. Ricard v. Williams, 7 Wheat. [20 U. S.] 59.

Juries are sometimes instructed to presume conveyances between private individuals, in favor of one who has proved a right to the enjoyment of the property, and whose possession is consistent with the conveyance to be presumed; especially if the possession, without such conveyance, would have been unlawful. The facts in this case would not seem to authorize the presumption of a deed from Ransdale or his heirs, to the defendant. There has been no relation of vendor or purchaser between them, to authorize such a presumption. On the contrary, it is in evidence they acquired their title from a different source. It would not be difficult to presume a title from Macker, under the circumstances. But the foundation of this presumption goes against the presumption as to Ransdale. From the deaths and minorities of those who held under Ransdale, it would be difficult to say that the presumption could be strengthened by a supposed acquiescence.

O'Bannon, it seems, was the original locator of Ransdale's warrant, and there is no evidence that Macker or the defendant ever claimed under him. There is no evidence that Macker ever had a shadow of title, unless his sale to the defendant and others shall be so considered. This presumption must not only be consistent with the facts of the case, but it must appear naturally to arise out of them. This question, it is contended, is the same at law as in chancery. This may be admitted, but how is it applied in chancery? Generally, it is raised in favor of a legal title against a stale equity. The person under a deed has entered into possession of real estate—has enjoyed it many years, and made valuable improvements upon it; at length a dormant equity is set up, of which the legal owner had no notice. Such a title is not favored in equity. The title of Macker was always open to investigation. The exercise of a little vigilance would have ascertained that the land sold by him belonged to another.

The case of the defendant is an exceedingly hard one. He and the other purchasers under Macker, entered upon the land in a wilderness state. It has been improved so as to present to the eye highly cultivated farms, orchards, comfortable dwellings, and every other convenience which could reasonably be desired. To accomplish this, the strength of their manhood has been exhausted, and some of them have gone down to the grave. The widows and children of some may remain. Under such circumstances, the ordinary sympathies of humanity should induce the claimants to compromise this matter on liberal terms. Verdict for defendant.