# McClinton *versus* The Pittsburg, Fort Wayne and Chicago Railway Co.

1. If a railroad company enters on land unlawfully without a legal appropriation and assessment of damages, ejectment is the proper remedy and the question is title not charge or encumbrance for the damages.

2. The right to recover land thus taken, is secured by the 4th section of 7th Article of the Amendments of 1838.

3. When the Commonwealth exercises the power of eminent domain it must provide the *means* of payment before taking property; a corporation or individual must *pay* or *secure* its price.

4. A railroad company without appropriation entering upon land, laying their rails, &c., and running their road are not using an easement but are in possession of the land.

5. Where a railroad company has tortiously entered and taken possession of land, and used it for their road, the owner may proceed in the mode provided by the Act of Assembly to assess damages.

6. Compensation being made, the title of the owner will be vested in the company, leaving them liable for the prior trespass.

7. The company might proceed to appropriate the land notwithstanding the tortious original entry.

8. The owner's right to damages for the trespass is a vested right of which he cannot be deprived.

9. The petition is not to recover past damages under an unlawful entry, but compensation for a right to be vested in the company.

10. The compensation assessed is not damages as that which would be recovered for the past trespass, but the price of a purchased privilege.

11. The Statute of Limitations does not apply to a petition under such circumstances.

12. The owner may recover judgment in ejectment to entitle him to mesne profits, to which the Statute of Limitations will apply.

13. The proceeding under the petition is inconsistent with taking possession by execution in the ejectment, and the court may stay execution for possession until the other proceeding be finished and the compensation paid.

14. Pittsburg *v.* Scott, 1 Barr 314, Commonwealth *v.* Wood, 10 Id. 97, Yost's Report, 5 Harris 524, Harrisburg *v.* Crangle, 3 W. & S. 464, Delaware,

[McClinton v. Railroad Co.]

L. & W. Railroad v. Burson, 11 P. F. Smith 369, West Chester v. Hannum, 13 Id. 475, remarked on.

November 7th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Writs of error to the Court of Common Pleas of *Allegheny county* : No. 151 and 175, to October and November Term 1869.

On the 14th of April 1868, Robert McClinton presented his petition to the Court of Common Pleas, setting out his ownership of a tract of land ; that in 1850 and 1851 the Ohio and Pennsylvania Railroad Company surveyed and built a railroad for about 1900 feet in length over said tract, and it had been used for a railroad ever since; that some years afterwards the Pittsburg, Fort Wayne and Chicago Railway Company became owners of the railroad, and had continued to use it for railway purposes since; that in 1851 the first-named company appropriated about 25 perches of the petitioner's land, and by legal proceedings $50 were assessed as his damages which had not been paid ; that no legal appropriation had been made for the remainder of his ground used for the railroad. The petition further set out that he had been unable to make any arrangement for his damages, and prayed for viewers to assess the damages, &c.

The Pittsburg, Fort Wayne and Chicago Company excepted to the petition, " because it appears therein that the cause of action complained of did not accrue within six years before said petition was filed." The court, May 5th 1865, quashed the petition for the reasons stated in the exception.

The petitioner took a writ of error, and assigned for error the quashing of his petition.

In 1868 McClinton commenced an action of ejectment against the same company for "a strip of land about 1900 feet long and 40 feet wide ;" the same land mentioned in the petition.

The case was tried, June 26th 1869, before Stowe, J. The plaintiff proved his title to the land ; that the road was constructed by the Ohio and Pennsylvania Railroad Company about 1850 for about 1900 feet through his land; that a small portion was by legal proceedings in 1851 appropriated, and damages assessed at $50 ; the remainder of the land used for the railroad was on the bed of a public road ; the public road was afterwards changed by proceedings in the Quarter Sessions, and laid out on the plaintiff's land, the company agreeing, in writing, to pay him $500, which had not been done.

The defendants gave evidence of the incorporation in 1848 of the Ohio and Pennsylvania Railroad Company by the states of Ohio and Pennsylvania ; and the taking of the ground in dispute for railroad purposes in 1850 and 1851. In September 1852 "The Ohio and Pennsylvania Railroad Company and other companies

were consolidated under the name of The Pittsburg, Fort Wayne and Chicago Railroad Company." In January 1857 the new company executed a mortgage on their entire property to secure bonds amounting to $10,000,000. On the 24th October 1861, the railroad was sold under the mortgage to J. Edgar Thomson and others. On the 25th of February 1862 the defendants were organized under authority of a law of Pennsylvania, passed March 31st 1860, and on the 2d of March the purchasers of the road sold it to the defendants. The parties agreed that about 15 perches of the ground described in the writ are not on the bed of the old public road, and that the rest is on the bed of that road.

The court instructed the jury to find for the plaintiff, reserving the question whether, under all the evidence in the case, he was entitled to recover.

Judge Stowe directed a judgment for the defendants on the reserved point, *non obstante veredicto*, saying: "Without undertaking to say that an action of ejectment will not lie in this case, because the plaintiff should be kept to the remedy pointed out by the statute in relation to damages accruing by the taking of land by railroad companies, I think, as more than six years have elapsed, that the Statute of Limitations is a bar to this action."

The plaintiff took out a writ of error, and assigned for error:— Entering judgment for the defendants.

*J. F. White,* for plaintiff in error, cited De Haven *v.* Bartholomew, 7 P. F. Smith 129; Thoburn *v.* Schuyl. Nav. Co., 7 S. & R. 411; McKinney *v.* Monon, Nav. Co., 2 Harris 64; Union Can. Co. *v.* Woodside, 1 Jones 176; Western Railroad *v.* Johnston, 9 P. F. Smith 290; The Del. and Lack. Railroad *v.* Burson, 11 Id. 369; Harrisburg *v.* Crangle, 3 W. & S. 464. All the actions mentioned in the Act of March 27th 1713, § 1, Sm. L. 76, Purd. 655, pl. 16, are personal actions.

*J. A. Lowrie* cited Foster *v.* Cumb. Valley Railroad, 11 Harris 371. He also referred to and commented on the cases cited for the plaintiffs in error.

The opinion of the court was delivered, January 3d 1871, by
Agnew, J.—These two cases can be considered together, the parties and the land in controversy being the same. In the ejectment the plaintiff sues for the possession of the road-bed used by the defendants running through his land; and in the petition for damages, he asks compensation for the right of roadway. The court below decided against the plaintiff in each case, on the ground that his claim was barred by the Statute of Limitations of six years. It is a conceded fact that 15 perches of this land covered

by the railroad are not on the bed of the old Beaver road, and are not included in the appropriation proceeding of the Ohio and Pennsylvania Railroad Company, the predecessor of the present railway company.    This, therefore, raises a question clearly upon the *title* of the defendants to so much of the land as was not embraced in the former highway, and not taken by the Ohio and Pennsylvania Railroad Company in due course of law; and how far the title of the plaintiff can be affected by the General Limitation Act of 1713.    Both the ejectment and petition were commenced within the two years, contained in the proviso to the Act of 17th April 1860, Pamph. L. 106, and, therefore, that act may be laid out of the case.    It is very clear that the title to the possession of land is not barred by the limitation of six years' adverse possession, but only by twenty-one years under the Act of 1785, and, consequently, the action of ejectment to recover a possession unlawfully taken is not barred by the Act of 1713.    How far an ejectment when used as a remedy to enforce a charge on land which is barred by limitation may be defeated thereby, is not the question here.    If the company entered unlawfully without a legal appropriation and assessment of damages, the only question which can arise in the ejectment is that of title, not charge or incum-brance.    Can a railroad company without a grant, release or legal appropriation, enter on any man's land *nolens volens,* and then bar his re-entry by an adverse possession of six years ?    The statement of the question refutes the proposition.    But the right of the plaintiff stands on higher ground than a mere act of the legislature.    The 4th section of the 7th article of the amendments to the Constitution adopted in 1838 provides that " the legislature shall not invest any corporate body or individual with the privilege of taking private property for public use without requiring such corporation or individual to make compensation to the owners of said property, or give adequate security therefor, before such property shall be taken."    This is a great right of protection not to be frittered away by construction, especially in times like these, when the power of vast railroad corporations has grown so formidable.    The 10th section of the 9th article of the Constitution of 1790 provides that no man's property shall be taken or applied to public use without the consent of his representatives and without just compensation being made.    Under this section it was held not to be necessary that the compensation should be actually paid before the property is appropriated, if a sufficient provision for compensation be directed by the legislature.    This is said by Rogers, J., in Pittsburg *v.* Scott, 1 Barr 314–15, a case decided after 1838, but one in which a *municipal* corporation took property under an act passed in 1836 before the adoption of the amendment.    The amendment of 1838 is not referred to or noticed in the argument or the opinion, and the doctrine was announced

[McClinton *v.* Railroad Co.]

on the authority of New York cases. The same judge repeated his language in The Commonwealth *v.* Wood, 10 Barr 97, citing Pittsburg *v.* Scott, 1 Barr 309. This case was also that of a *municipal* corporation, and no reference was made to the amendment. I refer to these cases not as standing in the way, but to distinguish them; and because they stand as the types of others. The amendment of 1838 was adopted to remedy a growing evil arising from the exercise of the power of eminent domain by *private* corporations and individuals, who afterwards became insolvent or unduly refused compensation, putting the owner to the expense of litigation to secure his rights. The difference in the exercise of the power of the state between private and public hands is stated by Lewis, J., in Yost's Report, 5 Harris 524, who refers to the purpose of the amendment of 1838, and says, quoting the language of Gibson, C. J., in Mon. Nav. *v.* Coons, 6 W. & S. 114, the difference between the two classes of cases has been held to be that a corporation or an individual must *pay* or *secure* the price of the property *before* it is taken; but the state must provide the *means* of payment at the passing of the act. It was in this spirit in Western Railroad Co. *v.* Johnston, 9 P. F. Smith 296, when discussing an attempt to reduce the rights of the landowner to the condition of a subordinate lien, we said, the owner who has never parted with his right stands on the higher fundamental right of property; that no one shall take and use it for the public purpose of a railroad without just compensation being made to him, and that this sacred constitutional right shall not be spirited away by refinement. The Ohio and Pennsylvania Railroad Company, a corporation of foreign parentage and birth, was adopted into the Pennsylvania family of corporations, with this feature in its charter. The 9th section provided, that it should first deposit with the clerk of the Court of Common Pleas a description of the rights and interests intended to be appropriated, and if unable to agree with the owner touching the damages, legal proceedings should take place to assess them; which being finished, it declares that " thereupon such corporation shall pay to the said clerk the amount thus assessed or secure the payment to the satisfaction of such court or of the judge issuing the warrant (to appraise), and on making payment or tender thereof to said clerk or on giving such security as may be required, it shall be lawful to hold the interests in such lands or materials thus appropriated." It is evident, therefore, from the requirement of the constitution and of the charter, that this corporation took no title to the 15 perches not appropriated by due legal process. Ejectment is the proper remedy in such a case. The owner is not bound to suffer an unlawful intrusion, and afterward fight an unequal battle for compensation. The argument that ejectment will not lie against one using a mere easement does not apply here; because actual pos-

session has been taken by the trespassing company, by building and fastening its structures upon the soil, and by daily and hourly use of them; and also because no easement has ever been acquired: it is simply an unlawful entry upon and taking of the road-bed and using it to the exclusion of the owner. It is not the case of fleeting and occasional footsteps, which print no trace upon the earth. The court below erred therefor in considering the case as to the 15 perches as a mere question of damages, and applying to it the six years' limitation.

The next thing is the petition for damages of the plaintiff as the owner of the soil. The first observation to be made is that it is evident the proceeding cannot apply to so much of the roadway as had been already appropriated by due course of law. As to that much the former proceeding must govern. But as to so much as never has been legally appropriated there can be no objection to the petition, even though the original entry of the company was tortious. The owner may waive his constitutional right to insist on ousting the trespasser, and proceed for compensation, which, upon being made, will divest his title and vest it in the company, leaving them liable only for the prior trespass. This much was said in the Borough of Harrisburg v. Crangle, 3 W. & S. 464, and there can be no objection to the doctrine, for it is still in the power of the company to proceed to appropriate the land for future use, notwithstanding the tortious character of the original entry, for which it is left to answer. The owner's right to damages for the trespass is a vested right of which he cannot be deprived, but as to that use which is yet to come, the legal remedy for appropriation and compensation may be exercised by either party. The court erred, therefore, in quashing the petition. The petition, properly used, is not for the recovery of past damages under an unlawful entry, but for compensation for a right to be invested in the company. Though the latter is often denominated damages its subject is essentially different from the former. It is called damages only in the sense of an unliquidated demand, but in its nature it is the price of a purchased privilege. On the contrary the claim for the tortious entry and illegal user of the land is purely and properly damages. It is obvious, therefore, that the Statute of Limitations is not applicable to the petition, which does not determine, unless by consent of the parties, the former damages for intrusion, but compensation only for the future use; leaving the former damages to be settled in a common-law form, according to Harrisburg v. Crangle, supra. There is nothing, therefore, to prevent the plaintiff from taking judgment in the ejectment to entitle himself to his action for damages as mesne profits, in which the application of the Statute of Limitations to the former damages becomes visible, and the true distinction between the action for the *title* and the action for the *damages*

[McClinton *v.* Railroad Co.]

is brought to light. But the proceeding under the petition is inconsistent with the taking of possession by execution in the ejectment, and therefore the court would be justified, after judgment therein taken, to secure the plaintiff's title, and enable him to recover his past damages, in staying execution for possession until the proceeding under the petition shall have been finished, and the compensation paid, which would thereby vest title to the easement in the company, and leave them liable only for the past damages for their unlawful intrusion into possession.

It is proper now to add that we are not unmindful of the decision in Hannum *v.* Borough of West Chester, 13 P. F. Smith 475, made in Philadelphia at the last session. That was not a case of actual taking, but of consequential damages from the diversion of a stream of water, and was ruled upon the special remedy provided by the legislature. It will be found, on an attentive reading of the opinion there, that, though reasoned differently, the fundamental principles of the opinion are the same as these now enunciated. To prevent misconception, however, the Chief Justice, Justice Williams concurring with him, took occasion to say, in concurring in the judgment, that he did not agree that the statute of limitations of actions is a bar in any case of taking under the right of eminent domain. I was not present at the argument of that case.

Nor do we overlook the case of The Delaware, &c., Railroad Co. *v.* Deborah Burson, 11 P. F. Smith 369. The proceeding there was upon a petition for damages. The entry of the company was in 1853 and the road was not completed until 1856, while the proceeding was instituted in 1861, less than six years after the completion of the road, and it recited and adopted the original entry of the company in 1853. Besides, the entry had been made under the written release of Deborah Burson, but who, being a married woman, and her husband not joining in the writing, though consenting thereto, was seeking by this means a greater compensation than the one dollar stated in the writing. The Statute of Limitations was pleaded as a bar to the entire proceeding by petition, and not merely to cut off the antecedent damages, the company not choosing to make any point as to them. The question arose upon the following point: " Under the evidence in this case the plaintiff's *entire* cause of action accrued and the statute began to run more than six years before the commencement of these proceedings; that before that time the road had been surveyed and located, the right of the plaintiff to sue for damages was complete, and *she cannot recover in this proceeding*, because more than six years have elapsed from the location of the road and from the death of her husband, James Burson."

This court held on this point that the special *statutory* proceeding for damages was not within the general Statute of Limitations.

[McClinton *v.* Railroad Co.]

There the plaintiff was willing to waive the trespass and claim her damages under the statutory proceeding, while the defendants, nothing loth to accept this mode of ending the controversy, made no question upon her right to recover damages for the trespass in the statutory mode. Hence, the question of limitation arose wholly upon the proceeding under the statute, and for that reason it was held that the General Limitation Act of 1713 was no bar. But in the present case the plaintiff, though reciting the entry of the railroad company in 1851, did not rest his right of recovery on that ground, but, by his ejectment, contested the lawfulness of the entry by the company, and still insists on his title to the land itself. . The two cases are, therefore, widely different, and the recovery in the ejectment will turn the right of the plaintiff to recover his damages for the unlawful entry and possession into a common-law form of action.

In the action of ejectment the judgment of the court below is reversed, and a *venire de novo* is awarded; and in the proceeding by petition the order of the court quashing the same is reversed, the petition reinstated, and a *procedendo* awarded.