## Covert v. Pittsburg and Western Railway Company, Appellant.

*Railroads—Acquisition of title to right of way.*

Where a railroad company takes a deed for its right of way from a person who is a mere intruder as to a part of the land described in the deed, the mere entry and occupancy of the land by the company does not invest it with title to an easement over the portion of the land as to which the grantor was a mere intruder.  As to such portion of the land, the company is bound to make compensation to the real owner, and if it fails to do so it may be dispossessed by an action of ejectment.

A railroad company which takes a deed of land for its right of way from a mere trespasser, cannot tack its possession of an easement thus acquired to the trespasser's previous possession in order to make title under the statute.

Argued May 15, 1901. Appeal, No. 152, April T., 1900, by defendant, from judgment of C. P. Butler Co., March T., 1900, No. 144, on verdict for plaintiffs in case of Hezekiah Covert and L. M. Covert v. The Pittsburg and Western Railway Company and Thomas M. King, Receiver. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed.

Ejectment for land in Jackson township. Before Greer, P. J.

At the trial the evidence tended to show that the land in dispute was a strip of land which the defendant claimed as a portion of its right of way under a deed from John Winter, and that as to land in controversy John Winter was a mere intruder.

Defendant's points were among others as follows:

2. If the jury finds that the defendants and those under and through whom they claim have held the actual, visible, exclusive, notorious, hostile and adverse possession of the land in suit for twenty-one years and more before suit brought, that such possession constitutes a complete title in the defendant against every person, including the plaintiffs, and the plaintiffs cannot recover. *Answer:* Refused, unless the jury finds that John Winter had acquired such title at the time he conveyed to the defendant, and this it cannot find without proof. [1]

4. That if the jury finds from the evidence that John Winter fenced the land in suit within his enclosure twenty-five years ago, that he was in actual possession thereof on and before November 9, 1877, claiming and holding to Connoquenessing creek as his northern boundary line and to the line fence of Abraham Zeigler as his western boundary line, and that he and the defendant claiming under him have held the actual, visible, exclusive, notorious, continuous, adverse and hostile possession of said land to said boundary lines for said period of twenty-five years, the plaintiffs' unrecorded title will not prevail against the defendant's title acquired by said possession, and the verdict should be for the defendant. *Answer:* Refused. [2]

4. That if the jury believes from the evidence that for more than twenty-one years prior to December 8, 1897, the date of the bringing of this suit, John Winter and the defendant company claiming under him by the agreement dated November 9, 1877, in evidence, and deed dated July 23, 1879, in evidence, occupied the land described in the præcipe and writ openly, notoriously, continuously, adversely and hostile to the title of the plaintiffs and those under whom they claim, it is too late for the plaintiffs to set up title against the defendant company, and the verdict should be for the defendant. *Answer:* Refused. [3]

6. That if the jury find from the evidence that John Winter was in the actual possession of the land in suit and claiming title thereto, that the entry of the railroad company thereon under the agreement and deed of John Winter in evidence was a lawful entry, and the running of the statute of limitations under John Winter's entry continued under the defendant's occupancy. *Answer:* Refused. [4]

7. That under all the evidence, the verdict of the jury must be for the defendant. *Answer:* Refused. [5]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*R. P. Scott,* for appellant.—One who purchases the right of a mere intruder, without title, may tack the possession of his vendor to his own in order to acquire title under the statute: Hughs v. Pickering, 14 Pa. 297.

An actual adverse occupation for twenty-one years, however tortious or destitute of color of right, gives a right, to the extent of the enclosure, against all the world but the state: Munshower v. Patton, 10 S. & R. 334; Malson v. Fry, 1 Watts, 433; Cluggage v. Duncan, 1 S. & R. 110; Hughs v. Pickering, 14 Pa. 297; Sholly v. Stahl, 2 W. N. C. 418; Zahn v. Pittsburg, etc., Ry. Co., 184 Pa. 79.

*Lev. McQuistion,* of *McQuistion, Vanderlin & Wilson,* for appellees.—The statute of limitations does not apply to a railroad company invested with the right of taking private property for public use: McClinton v. Pittsburg, etc., Ry. Co., 66 Pa.

405; Philadelphia, etc., R. R. Co. v. Cooper, 105 Pa. 239; Wheeling, Pittsburg & Baltimore Ry. Co. v. Cleland, 37 Legal Int. 466.

OPINION BY ORLADY, J., December 16, 1901:

The appellant fairly states the question involved as follows: "Did the appellant acquire title and right of possession to the land in suit under and by virtue of the entry of John Winter thereon, and the peaceable, actual, exclusive, notorious, hostile, continuous and adverse possession and occupancy thereof by John Winter" and the appellant claiming under agreement and deed from him for a period of twenty-three years before suit brought, and claims, under the act of the 26th of March, 1785, Pepper & Lewis's Digest, 2676, Pl. 21, that after twenty-one years of such possession, the right of a defendant cannot be questioned, whether it be a corporation invested with the right of eminent domain or that of a private individual.

The defendant claims title under an agreement for a right of way made with John Winter dated November 7, 1877, followed by a deed dated July 23, 1879, neither of which was recorded. The suit was instituted December 9, 1897. The title of John Winter and the extent of his possession were fairly submitted to the jury, viz: If the defendant in this case can succeed in showing a title in John Winter to the land in dispute at the time he made this agreement and deed, then your verdict must be for the defendant, but the law places on the defendant the burden of showing their title to the land and right of possession when the plaintiff has made out his case." Whether the land in dispute was embraced in the defendant's title was purely a question of fact, and we are unfortunately without the record description in an important deed in the line of defendant's title for this land in appellant's book. The quotation from this deed in appellee's book, which is not denied by the appellant, clearly indicates that the Covert coal lot was an adjoining property and not included in the description given in the deed. It was offered in evidence by the plaintiff in rebuttal, and of it the court says in the charge to the jury: "John Winter purchased a farm immediately south of this piece of land in dispute; he took a deed for it in 1865. The plaintiffs have offered that deed in evidence, which in the description of the land shows that this

piece of land of Winter's was bounded on the north by the Covert coal land,—this land in dispute."

In was contended by the appellee that John Winter's grant of right of way in 1877 did not include the Covert coal lot, and the plaintiff's first point, to wit: Under all the evidence in this case the verdict of the jury should be for the plaintiff for the land described in the writ, was affirmed with this qualification, " We cannot affirm that in that shape, but say if you believe Samuel Covert went into possession under the deed of Cornelius Martinias (June 23, 1843 ; recorded in deed book 141, page 343) and paid the taxes and kept possession of the land, and he and his wife under him held it so for twenty-one years, that would make a perfect title down to these plaintiffs in this case. That is a question for you ; you heard the proof, and I believe no witness was brought to deny that fact. We say if you believe outside of all these things that Samuel Covert and his wife and children under him have had possession of this land from 1843 continuously, holding adversely to everybody else, claiming under the deed of Cornelius Martinias or otherwise, and have had notorious possession, then the plaintiffs should have your verdict." No exception was taken to this answer of the court and it is not assigned for error. The verdict of the jury was for the plaintiff and the facts as submitted in the answer to the plaintiff's first point are found against the defendant.

The entry of the railroad company upon the Covert coal lot in 1877 and in 1879, under the agreement and deed of John Winter was either lawful or without authority of law, and the verdict of the jury establishes the fact that it was not lawful, but that of an intruder. Its mere entry and occupancy of the land did not invest it with title to an easement over land not then owned by John Winter. Had the entry been lawful, it could define the extent of the lawful appropriation by marks on the ground, or by actual occupation for twenty-one years. This it decided in Zahn v. Pittsburg, etc., Ry. Co., 184 Pa. 66.

1. There is some evidence that John Winter had actual possession of the lot and that phase of the question was fairly submitted to the jury.

It is clear, however, and was admitted by counsel on the argument that John Winter was not in possession under color of title, but was a mere trespasser. The railroad was affected

with notice of this fact and acquired only such right as he could convey. As he was a trespasser, so also was the railroad company unless it made or tendered compensation to the actual owner. It is well settled that a railroad company entering unlawfully is not absolved from the obligation to make compensation by reason of its possession for twenty-one years. It is difficult to see then how the case is helped by reason of the fact that the railroad company obtained its right of way from a mere trespasser, or how it can tack its possession of an easement thus acquired to the trespasser's previous possession in order to make title under the statute.

The second, third, fourth and sixth points submitted by the defendant are based on the assumption that the entry of the railroad company in 1877 on the Covert coal lot was a lawful one, and they were properly refused, inasmuch as the character of the entry was for the jury under the evidence, and that tribunal has found that the entry was without right. The corporation had no right to take possession of the land of the plaintiff's predecessors in title against the will of the owner without paying or securing the payment of a just compensation therefor, before such taking : Article 16, section 8, constitution of 1874. It follows that the original entry was a trespass, and that this action of ejectment is properly brought, McClinton v. Pittsburg, etc., Ry. Co., 66 Pa. 404 ; Phila., etc., R. R. Co. v. Cooper, 105 Pa. 239.

Under the verdict the plaintiff has shown a superior title to the land occupied by the defendant company, whose occupancy by its own default has never been made lawful either as against the plaintiff or as against any preceding owner. The defendant may yet proceed according to law to perfect his unlawful occupancy into a lawful right, but, on the case presented by this record, the plaintiff is entitled to judgment in his favor.

The judgment is affirmed.