Tompkins et ux., Appellants, *v.* Headley.

Argued March 4, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*A. G. Rutherford,* for appellants.—Plaintiff had title by adverse possession: Deppen v. Bogar, 7 Pa. Su-

perior Ct. 434; Olewine v. Messmore, 128 Pa. 470; Pederick v. Searle, 5 Sergt & Rawle, 239.

There was sufficient evidence to submit to the jury: Baker v. Bloom, 92 Pa. Superior Ct. 547.

*M. E. Simons,* for appellee.—The plaintiff did not establish title by adverse possession: Brolaskey v. McClain, 61 Pa. 146; DeHaven v. Landell, 31 Pa. 120; Johns v. Johns, 244 Pa. 48; Commonwealth v. Bierly, 37 Pa. Superior Ct. 496; Shaffer v. Lauria, 50 Pa. Superior Ct. 136; Seitz v. Pennsylvania Railroad Co., 272 Pa. 84; Baxter v. Girard Trust Co., 288 Pa. 260; Reiter v. McJunkin, 194 Pa. 303.

OPINION BY CUNNINGHAM, J., April 15, 1929:

An issue in ejectment was framed in the court below to try the title to a small piece of land, in the form of a triangle, between two dwellings in the borough of Waymart, Wayne County, in which William C. Headley, who has the paper title, was made defendant and Jesse B. Tompkins and Cora Tompkins, his wife, claiming by adverse possession, were made plaintiffs.

The trial resulted in a verdict in favor of the plaintiffs for a part of the land described in the petition for the rule; the trial judge granted defendant's motion for judgment in his favor n. o. v. and plaintiffs have appealed.

Two questions arise for our determination: Where a plaintiff in ejectment seeks to recover the whole of a described tract of land, can a verdict in his favor for a part only be sustained? If so, was there in this case sufficient evidence to support the verdict awarding to these plaintiffs a part of the land to which they claimed title?

1. The land in controversy lies between the properties of plaintiffs and defendant. Both houses front on the Belmont and Easton turnpike, running north

and south; defendant's property adjoins plaintiffs' on the north. The original division line, known as the Starkweather line, did not run at a right angle to the street line, but began at a point on the turnpike almost opposite the northeast corner of plaintiffs' house and ran northwest between the houses to a railroad cut at the rear of both properties. The land in controversy, which is in the shape of a right angle triangle with its base on the turnpike, lies to the north of the Starkweather line; the paper title to it is in defendant. Plaintiffs base their claim upon adverse possession by themselves and their predecessors for more than twenty-one years.

As stated, the lines of the tract in dispute form a right angle triangle; starting at the point where the Starkweather line meets the Belmont and Easton turnpike, the base runs north along the turnpike a distance of twenty feet; from that point the other leg runs westerly at a right angle to the base, a distance of approximately thirty-nine feet, until it meets the Starkweather line, which line forms the hypotenuse.

Plaintiffs claim that they and their predecessors in title have used all the land contained in this triangle and have regarded it as their own since 1880 and even prior to that date. This is denied by defendant. The jury, after considering all the evidence for both parties, found a verdict indicating that plaintiffs had established their claim to a part of the land, but not to the whole tract. The actual boundary between the lots as found by the jury in the verdict is a line starting at a designated post on the Starkweather line, opposite the southwest corner of defendant's house, and running southeast until it meets the turnpike, at a point approximately eight feet south of the point claimed by the plaintiffs.

If there was sufficient competent evidence to support this finding, we think plaintiffs are entitled to judgment upon the verdict although it awarded them

only a part of the tract claimed. It has been broadly stated in a number of cases that a plaintiff in eject-ment may be awarded a less quantity of land than he claims: 19 C. J. 1215, sec. 4, and cases there cited. Such a recovery was permitted in Baker v. Bloom, 92 Pa. Superior Ct. 547, although the point was not controverted. But in Schuldt v. Reading Trust Com-pany, 292 Pa. 327, our Supreme Court held that a plaintiff claiming an absolute interest in land, but whose proofs showed that she was entitled only to an undivided half interest, could recover a judgment for her actual interest in the property. The principle of that case seems to govern the present one, and we therefore decide the first question in the affirmative. (See also Seaman v. Waltemire, 79 Pa. Superior Ct. 366.)

2. The learned trial judge, apparently conceding that judgment could be entered on the verdict if it was sustainable, was of opinion that the case was one in which binding instructions for defendant should have been given, and accordingly entered judgment for de-fendant n. o. v. Our duty therefore is to examine the record for the purpose of ascertaining whether there was competent evidence upon which the jury could reasonably find a verdict for plaintiffs. There are no relevant writings to consider and, under the familiar rule, the testimony must not only be read in the light most advantageous to the plaintiffs, all conflicts therein being resolved in their favor, but they must be given the benefit of every fact and inference of fact which may reasonably be deduced from the evidence.

It is true, as the learned trial judge points out, that the burden of proof rests upon one who attempts to set up a title by adverse possession. He must show that he, or those under whom he claims, entered into the possession of the land as and for his own and that he has held actual, adverse, continued, visible, notorious, distinct and hostile possession thereof for

the full period of twenty-one years: DeHaven v. Lan-dell, 31 Pa. 120; Johns v. Johns, 244 Pa. 48. All of these elements must be proved.

What was the evidence in this case? In the first place there is a well, located on the Starkweather line and in the apex of the triangle, which has been used for many years by plaintiffs and their predecessors in title. There was for some years a pear tree east of the well, which was always claimed by plaintiffs' predecessors in title, and to which they attached at various times a swing. There was also evidence that plaintiffs and their predecessors planted flowers at different places in the triangle. Standing alone, these facts might not be sufficient to support the verdict (Johns v. Johns, supra, at p. 55), but they must be taken into consideration in connection with another fact of greater, and in our opinion controlling, signifi-cance.

From 1880 until 1903 there was a board fence be-tween the two properties. Defendant claims that it followed the Starkweather line, but we find no testi-mony to that effect. In any event, that was a question of fact which has been determined against defendant by the verdict. Several witnesses for plaintiffs testi-fied to the existence of this fence and its position; there were discrepancies in their statements and no witness had ever made exact measurements. The trial judge was of opinion that the evidence relative to the location of the fence was not sufficiently definite to sustain a finding evidently based to some extent upon it. In so holding we think the general principles of law, defining the quality and quantity of proof re-quired of plaintiffs claiming by adverse possession, were too strictly applied, especially where the facts testified to reach so far back into the past. In our opinion, the testimony of plaintiffs' witnesses lost but little force by reason of such qualifying words as "about" and "in my judgment." The question of

reconciling the discrepancies and finding the actual location of the fence was, of course, a matter for the jury if there was evidence to justify the submission of the case.

Several collateral matters were discussed in the opinion of the court below and in the briefs. Attention was called to the fact that the fence was removed in 1903. But, assuming that there was proof of adverse possession up to its line, this possession had ripened into title before the removal. For the same reason, the quit claim deed to the tract given to plaintiffs by their predecessors in title in 1923 has no bearing upon the real issue in this case.

We are of opinion, upon a review of the whole record, that the question of adverse possession was one of fact for the jury and that there was sufficient competent evidence to support their finding.

The judgment for defendant is reversed and is here entered for plaintiffs on the verdict.