# Barnsdall, Appellant, v. Bradford Gas Co.

*Mines and mining—Oil and gas lease—Lease—Title—Possession—Ejectment.*

1. Where an instrument in writing does "grant, demise, lease and let unto the said party of the second part . . . . all that certain tract of land . . . . containing 100 acres, . . . . for the sole and only purpose of mining and operating for oil, gas and other minerals and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products," the paper creates a corporeal interest in the lessee in the demised premises and is not merely a license to enter and operate for oil and gas; and the lessee although he never entered into possession of the premises may maintain an action to recover possession from a third party not claiming under the lessor.

2. There is a broad distinction between a lease of a mine, under which the lessee enters into possession and takes an estate in the property, and a license to work the same mine. In the latter case, the licensee has no permanent interest, property, or estate in the land itself, but only in the proceeds, and in such proceeds not as realty, but as personal property, and his possession is the possession of the owner. A contract simply giving a right to take ore from a mine, no interest or estate being granted, confers a mere license, and the licensee acquires no right to the ore until he separates it from the freehold. But an instrument

that demises and leases certain lands for mining purposes only, for a designated term of years, at a fixed rent, and giving the right to erect all necessary buildings, etc., is a lease, and not merely a mining license.

Argued May 4, 1909. Appeal, No. 75, Jan. T., 1909, by plaintiff, from judgment of C. P. Potter Co., Dec. T., 1907, No. 10, for defendant non obstante veredicto in case of William Barnsdall, Jr., v. Bradford Gas Company. Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Ejectment for an interest in land in Hebron township. Before Ormerod, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for plaintiff.

Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*W. I. Lewis*, with him *W. F. DuBois, Archibald F. Jones* and *R. R. Lewis*, for appellant.—A lease of land for a definite term and for a particular purpose, creates a corporeal interest, which will sustain an action of ejectment by the lessee against a stranger to the title: Funk v. Haldeman, 53 Pa. 229; Caldwell v. Fulton, 31 Pa. 475; Chicago & Allegheny Oil & Mining Co. v. Petroleum Co., 57 Pa. 83; Stoughton's App., 88 Pa. 198; South Penn Oil Co. v. McIntyre, 28 S. E. Repr. 922; Kitchen v. Smith, 191 Pa. 452; Duke v. Hague, 107 Pa. 57; Brown v. Beecher, 120 Pa. 590; Hicks v. American Natural Gas Co., 207 Pa. 570; Williamson v. Jones, 25 L. R. A. 222.

The following cases hold that a lease of land for a term of years for the purpose of mining, boring for and producing oil and gas creates a corporeal interest in the lessee, namely, an estate in land and not a mere license: Chicago, etc., Oil & Mining Co. v. Petroleum Co., 59 Pa. 83; Barker v. Dale, 3 Pitts. 190; Titusville Novelty Iron Works' App., 77 Pa. 103; Stoughton's App., 88 Pa. 198; Brown v. Beecher, 120 Pa. 590;

Chamberlain v. Dow, 16 W. N. C. 532; Duke v. Hague, 107 Pa. 57.

The following cases hold that a grant of an exclusive right to produce oil and gas from certain lands amounts neither to a lease of the land nor a sale of the minerals in the land, but is merely a license to work the land for minerals: Funk v. Haldeman, 53 Pa. 229; Dark v. Johnston, 55 Pa. 164; Karns v. Tanner, 66 Pa. 297; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173; Thompson's App., 101 Pa. 225; Hicks v. Gas Co., 207 Pa. 570; Kelly v. Keys, 213 Pa. 295.

*A. S. Heck* and *W. K. Swetland*, with them *W. E. Burdick*, for appellee.—Defendant contends that the agreement in question is but a license, an uncorporeal hereditament which conferred upon the Cummings Oil & Gas Company the right to go upon the lands in question and operate the same for oil and gas, and having discovered the same to sever it from the realty: Lehigh, etc., Coal Co. v. Wright, 177 Pa. 387; Funk v. Haldeman, 53 Pa. 229; Dark v. Johnston, 55 Pa. 164; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173; Thompson's Appeal, 101 Pa. 225; Hancock v. McAvoy, 151 Pa. 460; Nat. Gas Co. v. Philadelphia Co., 158 Pa. 317; Hicks v. American Nat. Gas Co., 207 Pa. 570; Kelly v. Keys, 213 Pa. 295.

Appellant cannot maintain an action of ejectment, entry never having been made on the premises: Sennett v. Bucher, 3 P. & W. 392; Williams v. Downing, 18 Pa. 60; Natural Gas Co. v. Phila. Co., 158 Pa. 317; Watson v. Hue, 9 Pa. Dist. Rep. 519.

OPINION BY MR. JUSTICE MESTREZAT, June 22, 1909:

We think the learned court below was in error in setting aside the verdict and entering judgment non obstante veredicto for the defendant. The præcipe and writ show this case to be ejectment for the recovery of 100 acres of land in Hebron township, Potter county. The parties claim through a common source of title. The plaintiff's title rests upon what is known as a gas and oil lease, dated November 8,

1906, the material portions of which are as follows: "The said party of the first part, for and in consideration of the sum of one dollar . . . . and with the covenants and agreements hereinafter given on the part of the party of the second part, . . . . has granted, demised, leased and let, and by these presents do grant, demise, lease and let unto the said party of the second part, . . . . for the sole and only purpose of mining and operating for oil, gas and other minerals and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products, all that certain tract of land . . . . containing one hundred acres, more or less, . . . ." The lease was to remain in force for a term of ten years, and as much longer as the premises were operated for oil or gas or as the rent for failure to commence operations was paid. The consideration was the delivery in pipe lines to the credit of the first party the equal one-eighth part of all the oil produced and saved from the premises.

The lessee never went into possession of the premises, and brings this action to recover possession from a third party who does not claim under the lessor. The defendant resists a recovery on the ground that the agreement above recited, and upon which the plaintiff relies, conveyed no interest in the land but was simply a license to enter for the purpose of operating for oil and gas, and therefore did not convey a title sufficient to sustain an action of ejectment, the plaintiff never having been in possession. The plaintiff concedes that if the interest conveyed by the agreement was simply a license to operate for oil, the action cannot be sustained. On the other hand, the plaintiff contends that the agreement between him and his lessor conveyed a corporeal interest or an estate in land, and was not a mere license to drill and operate for oil on the premises leased; that being an interest in land and he having a right of possession by virtue of his lease, can recover the possession of the demised premises in an action of ejectment.

Whether an agreement, commonly known as an oil and gas lease, creates an estate or interest in land or is a mere license to enter and operate for those minerals has frequently been

before this court, as the numerous reported decisions attest.
An examination of the cases will disclose that they have
drawn a clearly defined distinction between agreements which
create a lease of the land for mineral purposes and those
which are simply a license giving to the licensee authority to
enter and operate for minerals. While this distinction has
not been strictly adhered to in all the cases, yet it is recog-
nized and has been established in the leading cases on the
subject in this state, and is sustained by text-writers. It is
well stated in 27 Cyclopedia of Law & Procedure, 690, where
it is said: "There is a broad distinction between a lease of a
mine, under which the lessee enters into possession and takes
an estate in the property, and a license to work the same
mine. In the latter case the licensee has no permanent in-
terest, property, or estate in the land itself, but only in the
proceeds, and in such proceeds not as realty, but as personal
property, and his possession is the possession of the owner.
A contract simply giving a right to take ore from a mine, no
interest or estate being granted, confers a mere license, and
the licensee acquires no right to the ore until he separates it
from the freehold. But an instrument that demises and
leases certain lands for mining purposes only, for a desig-
nated term of years, at a fixed rent, and giving the right to
erect all necessary buildings, etc., is a lease, and not merely
a mining license."

The language of the agreement in the case at bar shows it
to be a lease, conveying an interest in land, a corporeal and
not an incorporeal hereditament. The lessor does, in the
language of the lease, "grant, demise, lease and let unto the
said party of the second part . . . . all that certain tract of
land . . . . containing one hundred acres, . . . . for the
sole and only purpose of mining and operating for oil, gas and
other minerals and of laying pipe lines and of building tanks,
stations and structures thereon to take care of the said
products." It will thus be seen, by this transposition of the
language of the lease, that the land itself is granted and de-
mised, and not simply the right to enter upon and prospect
and operate for oil or gas. It is not simply a privilege given

to the lessee to use the premises for mining purposes but the land itself is demised with the right to obtain the minerals therein. By the agreement the exclusive right to take and appropriate all the minerals is conveyed, and during the term of the lease the lessor has no right to enter and operate for oil or gas. The title to the oil except the one-eighth thereof is vested in the lessee, as is also the title to the gas and other minerals in the land. Under the rule of construction established, not only in other jurisdictions, but by our own cases, therefore, the agreement creates a corporeal interest in the lessee in the demised premises, and is not merely a license to enter and operate for oil and gas. In Chicago & Allegheny Oil & Mining Company v. United States Petroleum Company, 57 Pa. 83, the lease contained this language: "The party of the first part hereby covenants and agrees to lease to the party of the second part his heirs and assigns, all his right, title, interest and claim in and to all that certain piece or parcel of land . . . . the said party of the second part to have the sole and exclusive right to bore or dig for oil on said lands and gather and collect the same therefrom, for the term of twenty years from the date hereof." Mr. Justice AGNEW, in the opinion of the court, speaking of the character of the agreement, says (p. 90): "The agreement . . . . is manifestly a lease for years of a corporeal tenement with an added exclusive right to bore for, obtain and take the oil found, returning as rent one-fourth of the product to the lessor." In Titusville Novelty Iron Works' Appeal, 77 Pa. 103, Mr. Justice GORDON delivering the opinion and speaking of a leasehold on which were a house and an oil well, said (p. 107): "A lease of land during the term is as fixed as the land itself, for it can only be used upon the land out of which it arises. It is nothing more or less than a right to use a freehold for the term mentioned in the lease. It is therefore an estate in land." In Kitchen v. Smith, 101 Pa. 452, the land was leased for fifteen years "for all purposes necessary to develop the same by procuring oil and taking it therefrom, together with a right to put up and keep tanks thereon for its storage." As to the estate created by the lease, Mr. Justice TRUNKEY

delivering the opinion says (p. 457): "The lease vested in the lessees and their assigns, the exclusive possession of the land for the purpose of searching for, producing, storing and transporting oil. They had the right to possession of so much of the land as was necessary for said purpose, and were in the actual possession of a considerable part, if not the whole. Their right was not a mere license." In Duke v. Hague, 107 Pa. 57, the contract granted and leased "the exclusive right for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil, all that certain tract of land, . . . . to have and to hold the said premises exclusively for the said purpose only, unto the said party of the second part, . . . . for and during the full term of twenty years." The trial court held that the lease created an interest in the land. Mr. Justice Trunkey in affirming the judgment said (p. 66): "The purpose of the lease is first named, but that the land is leased for that purpose is as plain as if a description of the land preceded the clause restricting its use. . . . A portion of the oil that may be produced is reserved as rent or royalty. Failure of the lessee to perform his covenants will avoid the lease. Notwithstanding these stipulations, the lessee is vested with an interest in the land. His interest is that of a tenant for years for the purpose of mining, he has an absolute right of possession of all the surface necessary, and no one else can rightfully take out oil during the term, save under him. The whole of the oil, or only a part, may be taken under the lease, but whatever shall be taken is of the substance of the realty. He is not an absolute owner of the whole of the oil, as he would be were all the oil in place conveyed to him in fee." In Brown v. Beecher, 120 Pa. 590, the land itself was demised "with the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals and collecting the same therefrom." Mr. Justice Clark in delivering the opinion said (p. 603): "As to the legal force and effect of this right there can, we think, be no doubt: it conveyed an interest in the land; in this respect it is distinguished from a license."

Many other cases to the same effect might be cited, but

these are sufficient to show that the agreement between the plaintiff and his lessor was a lease, conveying an interest in the land; and was not a license to enter upon the land and operate for mining purposes. In the last case cited, the decisions referred to above are distinguished from Funk v. Haldeman, 53 Pa. 229, and kindred cases by Mr. Justice CLARK in the following language (p. 603): "The contract of February 3, 1882, between Cornon and Marsh, is not a mere license as in Funk v. Haldeman, 53 Pa. 229, for in that case the words of the grant amounted neither to a lease nor a sale of the land, nor of any of the minerals in the land. Funk's right was therefore declared to be a license to work the land for minerals, a license coupled with an interest which the licensor could revoke."

The defendant contends that, conceding the contract in question to be a lease and not a license, the plaintiff cannot maintain ejectment as he had not entered into possession of the premises. We are aware of the rule at common law which in the case of an ordinary lease requires the lessee to have been in possession of the premises before he can maintain ejectment against anyone who had ousted him. That is the rule recognized and followed in this state where real property is demised for the purpose of occupancy and use by the tenant. But we are not disposed to enforce it in cases like the present where by the contract the lessee is granted the possession of the land with the sole and exclusive right to mine and remove the minerals therein. In such case, while the tenant is regarded as a lessee, yet by the agreement he obtains title to the minerals and the right to the possession of the premises for removing them. As said in Duke v. Hague, 107 Pa. 57, the tenant has an absolute right of possession of all the surface necessary to enable him to drill and remove the oil and no one else can rightly take out oil during the term, save under him. The contract gives him the right to the oil and to the possession of the land to enable him to remove it. As also said in the Duke case, the whole of the oil, or only a part, may be taken under the lease, but whatever shall be taken is of the substance of the realty. Having ac-

quired by the contract a right to a part of the realty, the law should give the lessee an adequate remedy to enforce that right. Ejectment is the proper action for the recovery of possession of land in this state. It is a possessory action, and if a party has a right to possession and the immediate right to enter, he may maintain ejectment. Here the lessee has the right to the possession of the premises, the immediate right to enter, and the right to take the oil therefrom which is a part of the realty. It will be observed that the lessee has not simply the right to the possession of the premises, but also the title to the oil or such part thereof as he may be able to remove during his tenancy.

It is apparent that the only effective remedy for the lessee is ejectment, by which he may recover possession of the premises. An action on the contract, the ordinary remedy by the lessee for a breach thereof in refusing to give possession of the premises, would be entirely inadequate. The value of the oil to the lessee would depend upon the quantity produced and the fluctuations of the market during the ten years of the lease. It is apparent, therefore, that there is no standard for computing damages which would give the lessee a certain and an adequate remedy by an action on the contract. Such difficulty can be overcome, and the rights of the parties, contesting for the possession of the premises, can be adequately enforced by an action of ejectment in which the party legally entitled can be placed in possession of the oil.

This is not a contest between the lessor and the lessee for the possession of the premises. The lessor concedes to the lessee the right to the oil and to the possession of the premises for the purpose of removing it. This action is by the lessee against a third party who claims adversely to the lessor, and we think he can maintain ejectment which is the only action that will afford him an adequate remedy for his alleged injuries. The right to maintain the action is not decided but is recognized in Messimer's Appeal, 92 Pa. 168; Long's Appeal, 92 Pa. 171; Williams v. Fowler, 201 Pa. 336.

The right of the lessee in a mining lease to maintain ejectment was sustained by the common pleas of Luzerne county

and by the circuit court of the United States for the western district of Pennsylvania. In Grotz v. The Lehigh and Wilkes-Barre Coal Co., 1 Kulp, 53, Judge WOODWARD held that ejectment may be maintained by the lessee of coal under a coal lease against the owner of the fee in possession. In charging the jury he said (p. 57): "Supposing the parties have a right to a suit, is ejectment a proper remedy? We hold that ejectment may be maintained; that a lease of coal, the title to the surface, and the title to the coal remaining in the lessor, subject only to the lease, can be the basis of an action of ejectment without there having been any actual entry upon the coal, or any actual mining and taking away of the coal." Barker v. Dale, 3 Pitts. Rep. 190, was an action of ejectment in the circuit court of the United States for the western district of Pennsylvania, and was tried before McKENNAN, Cir. J. The action was by a lessee, who had never taken possession, against a subsequent lessee under the same lessor, and was brought on a written lease by which certain land was let to the plaintiff "for the sole and only purpose of mining and excavating for petroleum, coal, rock or carbon oil, or other valuable mineral or volatile substances." The court held that ejectment would lie, and in answer to the defendant's first point said: "We are of the opinion that by the lease, dated December 8, 1865, a corporeal interest in the business therein described was vested in the plaintiff, which is the proper subject of an action of ejectment." And in answer to the fourth point the court replied: "The lease grants to the plaintiff for a determinate term, the premises in dispute, for the purposes therein stated, subject to lessor's 'use of the same for the purpose of tillage;' and this is exclusive of any right of the lessor to mine or excavate within their defined limits, for petroleum, coal, rock oil, carbon oil, or other mineral or volatile substances."

The judgment is reversed, and the court below is directed to enter judgment on the verdict.