Ontelaunee Orchards, Inc., Appellant, *v.* Rothermel et ux.

Argued November 13, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Geo. B. Balmer,* with him *Zieber & Snyder,* for appellant.

*C. Wilson Austin,* with him *John W. Speicher,* for appellees.

OPINION BY CUNNINGHAM, J., March 2, 1940:

The material facts in this action of ejectment are not in dispute and may be summarized as follows:

Jacob Stoudt, the common source of title, died in 1853 seized of a tract of land containing over three hundred acres, including the twenty-five perches here in dispute, located in Bern Township, Berks County. By his will he devised the entire tract to his son, John Stoudt. Our Supreme Court in *Urich et ux. v. Merkel,* 2 W. N. C. 550, (1876), and *Urich's Appeal, Stoudt's Estate,* 86 Pa. 386, (1878), held that, although the devise was to John Stoudt and his heirs, other parts of the will showed that John Stoudt took but a life estate, with remainder to his five children in fee.

By deed dated May 14, 1866, ten years before the Supreme Court decided he had but a life estate, John

Stoudt and his wife conveyed a small portion, twenty-five perches, of the three hundred acre tract, to the Bern Township School District. An important question in this case is whether this deed purported to convey the twenty-five perches in *fee simple* to the school district. The deed recited that the grantors "do grant, bargain, sell, assure, and convey to the School District aforesaid, and its assigns" the lot in question. The conveyance identified this lot as "being a part of the premises which Jacob Stoudt ...... by his last will and testament ...... did give and devise unto his son John Stoudt (party hereto) during his natural life, as in and by the said recited will ...... more fully and at large appears."

The habendum clause read: "To have and to hold the said piece of ground and appurtenances to the said School District aforesaid its successors and assigns forever for the establishment and support of common schools in said district according to law."

The school district entered, erected a school building prior to 1870, and occupied the premises continually as a public school until July 2, 1931, when it conveyed a purported fee simple in the lot to the Rothermels, defendants below and appellees herein.

John Stoudt died in 1870 leaving five children and a widow to survive him. By partition proceedings instituted in 1876 Emma H. Fisher, one of John Stoudt's children, was awarded a tract of eighty-six acres, including the twenty-five perches previously conveyed to the school district by her father. By subsequent conveyances, Emma H. Fisher's title became vested in plaintiff, Ontelaunee Orchards, Inc.

Plaintiff's summons issued July 25, 1938,—sixty-eight years after the death of John Stoudt. The school district had exclusive possession of the lot for a period of sixty-five years—four years during the lifetime of John Stoudt, and sixty-one years after his death. The case was tried before REESE, P. J., of the Ninth Judicial

District, specially presiding, and a jury, which rendered a general verdict in favor of defendants. In connection therewith, it answered certain specific questions submitted to it by the trial judge to the effect that the possession of the school district had been hostile as against the remaindermen and their successors in title since 1866. The trial judge subsequently correctly fixed the earliest date at which the statute could begin to run as 1870, the year in which John Stoudt died. Plaintiff's motions for judgment n. o. v., or a new trial, were denied and it has appealed from the judgment entered on the verdict.

Two questions are raised by appellant's assignments: (1) It is contended there was no evidence of such an adverse holding by the school district during the sixty-one years following John Stoudt's death as is essential to the establishment of a title by adverse possession; and (2) assuming the school district's possession to have been hostile during that period, since by the Act of April 9, 1867, P. L. 51, (repealed and superseded by Section 605 of the Act of May 18, 1911, P. L. 309, Art. VI, 24 PS §691) it had the power of eminent domain, it could not in any event acquire title by adverse possession.

1. In connection with its first proposition, appellant asserts the school district's holding over after the death of its grantee, the life tenant, was in subservience to the title of the remaindermen and that some open, notorious and unequivocal act was necessary to make such holding hostile or adverse.

Clearly, the burden of proof rests upon one who attempts to set up a title by adverse possession to show all the necessary elements thereof: *Tompkins et ux. v. Headley*, 96 Pa. Superior Ct. 133, 136.

As between the grantees or representatives of a life tenant and the remaindermen, it is clear that the statute of limitations cannot run against the remaindermen until after the death of the life tenant, for not until

then does the latter's right of action accrue: *Gernet et al. v. Lynn et al.*, 31 Pa. 94; *Ege et al. v. Medlar et al.*, 82 Pa. 86; *Davis v. Dickson*, 92 Pa. 365; *Stahl v. Buffalo R. & P. Ry. Co.*, 262 Pa. 493, 498, 106 A. 65; *Lloyd's Estate*, 281 Pa. 379, 386, 126 A. 806. As Mr. Justice SADLER stated in Lloyd's Estate, supra, at page 386: "During the continuance of the life estate, one holding in remainder is not bound to notice possession taken and continued by virtue of a conveyance from the life tenant: *Stahl v. Buffalo R. & P. Ry. Co.*, 262 Pa. 493; *Gernet v. Lynn*, 31 Pa. 94."

The principle is set forth in 21 Corpus Juris, page 972, Section 122, as follows: "Nor does the possession of the grantee of a tenant for life become adverse to the remainderman or reversioner until after the death of the life tenant, whether the conveyance purports to transfer only the life estate or the title in fee simple." See also 1 R. C. L. 743, Sections 63, 64.

Where, however, the life tenant purports to convey a fee simple title a holding over by his grantee after his death would, without more, be adverse to the remaindermen in the absence of circumstances showing the contrary. As clearly summarized in 21 Corpus Juris, page 975, Section 125: "After the determination of the life estate the possession of a person who had disseized the life tenant, or of a grantee of the life tenant holding under a deed conveying the fee simple, is deemed adverse to the remainderman or reversioner, and if after the termination of the life estate the remainderman or reversioner permits the representatives of the life tenant to retain possession under claim of title, such possession will be adverse so as to bar in time the title of the remainderman." See *Maus v. Maus*, 80 Pa. 194, and cases referred to in 19 L. R. A. 839, pages 850-852; 112 A. L. R. 1042-1051.

On the other hand, the Pennsylvania cases seem to indicate a distinction between a grantee of a life tenant holding over under a deed conveying a fee (in which

case the holding would be adverse to remaindermen), and cases where a grantee or representative of the life tenant simply holds over after the life tenant's death, without asserting claim to anything more than a life estate: Tiffany, Real Property (2d ed.) 1920, Volume 2, Section 513, page 2014, note 39.

Typical of the latter type of case is *Bannon et al. v. Brandon*, 34 Pa. 263, relied upon by appellant as controlling here. In the Bannon case the widow of a life tenant held over, as did her second husband, after her death, and then sold to Brandon. The remaindermen or heirs of the original owner, Ormsby, did not commence their action until more than twenty-one years after the death of the life tenant. The Supreme Court pointed out that the possession of those holding over after the death of the life tenant was not adverse, and they did not acquire title by adverse possession, stating (page 267): "It is abundantly established that where the entry has not been adverse, where he who sets up the statute of limitations came in expressly or legally in subservience to the title of the owner, he cannot be permitted to treat his subsequent continued possession as adverse. Before the statute commences to run in favor of such an occupant, the privity between him and the owner must have been disowned, severed by some unequivocal act." The Bannon case has been consistently followed for the proposition quoted: *Cadwalader v. App et al.*, 81 Pa. 194; *Jenkins v. McMichael*, 17 Pa. Superior Ct. 476; *Hover v. Hills et al.*, 273 Pa. 580, 117 A. 346; and *Johns v. Johns*, 244 Pa. 48, 90 A. 535.

The deed of 1866 from John Stoudt and his wife to the school district, when considered as a whole, clearly, on its face, purported to convey a fee simple title to the school district. The grant is to the "School District aforesaid, and its assigns." The habendum clause gives the estate "to the said School District aforesaid its successors and assigns *forever* ......" The purpose

of the habendum clause in a deed is to determine what estate passes: Robey, Real Estate & Conveyancing in Pennsylvania, page 81, Section 81; and Fallon, Penna. Law of Conveyancing, page 174. The habendum may enlarge, expound, qualify or vary the estate granted in the premises of the deed: *Irwin v. Hoffman et al.*, 319 Pa. 8, 15, 179 A. 41, and authorities there cited. Here the habendum is consistent with the previous grant and plainly evidences an intention to convey an estate in fee simple. It is true that the deed, in reciting John Stoudt's title, refers to it as a life estate,—but this portion of the deed is not controlling on the quantum of the interest purportedly granted. The recital is not a necessary part of the deed, and where the recital and operative part of the deed conflict, the operative part prevails if certain and definite: Robey, Real Estate & Conveyancing in Pennsylvania, supra, page 78, Section 78; Elphinstone on Interpretation of Deeds, page 130; *Continental-Equitable Title & Trust Co., Trustee, v. C. B. & L. Assn. et al.*, 266 Pa. 298, 300, 109 A. 776. "The grant [in a deed] cannot be diminished by a mere recital in the description": *Tate v. Clement et al.*, 176 Pa. 550, 558, 35 A. 214.

There was evidence introduced at the trial which, along with the terms of the grant itself, would tend to show an adverse holding by the school district, and a claim by it to a fee simple title. Witnesses, including a teacher of the school, a director and the wife of one of the directors, testified that the district built a school building in 1866 which, together with the ground surrounding it, was used continually as a public school until the sale to defendants in 1931, that the school district never made any other use of the property, repaired the building and never paid rent to anyone.

We think that the words of the grant in the deed to the school district, coupled with the evidence of acts of dominion, ownership, and use to which the property was put, are sufficient to support the jury's finding that

the district's possession was adverse to the remainder-men, and continued so between 1870, the death of the life tenant, and 1931, or well over the statutory period. This claim of ownership, supported by the face of the district's record title, and by the character of the occupancy for the statutory period, warranted the verdict; *Monroe Water Supply Co. v. Starner,* 242 Pa. 18, 88 A. 782; and *Hutchison et al. v. Little Four Oil & Gas Co. et al.,* 275 Pa. 380, 387, 119 A. 534.

For these reasons, we think the case at bar is distinguishable from *Bannon v. Brandon,* supra.

2. Appellant's second proposition is based upon cases holding that where a corporation having the right of eminent domain enters upon another's land and uses the same for corporate purposes, it will be presumed that the entry was under such right, and possession, no matter how long the period may have been, will not bar the owner's rights: *Connellsville Gas Coal Co. v. B. & O. R. R. Co.,* 216 Pa. 309, 65 A. 669; *Carter v. Ridge Turnpike Co.,* 208 Pa. 565, 57 A. 988; *Brankin v. Phila., Newton & N. Y. R. R. Co.,* 286 Pa. 331, 133 A. 563.

In the Connellsville case the railroad had entered with the consent of the landowner and used the land for over twenty-one years. The Supreme Court permitted the owner to recover compensation for the taking, affirming a judgment in ejectment conditioned upon the company's refusal to pay damages within ninety days.

In the Carter case the turnpike company had the right to enter by purchase as well as by eminent domain. The Supreme Court gave the owner the benefit of the presumption that the entry was under the company's power of eminent domain, and affirmed a judgment for the turnpike company (22 Pa. Superior Ct. 162), not on the ground relied upon by this court—that the company acquired title by adverse possession — but because

plaintiff failed to overcome the presumption of payment arising from a long lapse of time.

We think the case of *Covert v. Pittsburgh & Western Railway Co.,* 204 Pa. 341, 54 A. 170, controls the present one and qualifies the broad proposition that a corporation having the power of eminent domain may not acquire title by adverse possession. In the Covert case, the Supreme Court, reversing this court (18 Pa. Superior Ct. 541), held that a railroad company which purchased the inchoate or "sprouting" title of a trespasser, claiming by adverse possession, could tack on its adverse possession for the remainder of the statutory period and acquire a title good as against the record owner. Mr. Justice BROWN (later Chief Justice) there stated (pages 343, 344) : "We need not consider the cases holding that a railroad company, possessing the right of eminent domain, cannot set up adverse possession for the statutory period, when the real owner of the land undertakes to assert his rights in it. The reason that adverse possession cannot be set up in such a case is, that the law presumes, when a railroad company takes land for its corporate purposes, it does so under its high right of eminent domain, and not as a wilful trespasser whose trespass may grow into a title. ...... The reason of the law in the case of a simple taking by a railroad company possessing the right of eminent domain does not exist when it becomes a *purchaser,* and cessante ratione legis, cessat lex" (Italics supplied.)

It seems to us the principle there applied is controlling here. Stated in another way, there are equally as sound reasons for refusing to apply the rule of the Connellsville case to this one as there were in the Covert case. Here the corporation possessing the power of eminent domain, originally took title as a *purchaser,* under a deed containing words purporting to convey the fee. It also, from the beginning, exercised acts of dominion over the land tending to show absolute owner-

ship. Under such circumstances there is no room for the presumption that the school district entered or continued to hold under its power of eminent domain.

For the same reason, the established principle that a taking under eminent domain gives only a qualified fee, viz., for so long as the land is used for corporate purposes, and not a fee simple, in the absence of express statutory provision (*Lazarus v. Morris*, 212 Pa. 128, 61 A. 815; and *Dickel v. Bucks-Falls Electric Co.*, 306 Pa. 504, 160 A. 115) has no application here. Our examination of this record has not convinced us that any of the assignments of error should be sustained.

Judgment affirmed.