Donegal Township School District *v.* Crosby, Appellant.

Argued November 15, 1954.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (ROSS, J., absent).

*Luther C. Braham,* with him *Darrell L. Gregg* and *Galbreath, Braham & Gregg,* for appellant.

*Harry K. McNamee,* with him *James E. Marshall, John H. Marshall* and *Marshall, Marshall & McNamee,* for appellee.

OPINION BY WOODSIDE, J., March 24, 1955:

This is an appeal from judgment non obstante veredicto in favor of the plaintiff after verdict for the defendant in an action of ejectment.   It involves title to a plot of ground formerly used for school purposes.

There is no serious dispute over the following facts: In 1884 John Pontius was the owner of a 195 acre farm in Donegal Township, Butler County.   By a will,

dated July 22, 1884 and probated as his last will and testament shortly after his death on January 22, 1892, he devised to his son, George Pontius, 85 acres of his farm upon condition that George would pay three legacies.

Subsequent to the date of John's will but prior to his death, probably in 1889 or 1890, the plaintiff school district came into possession of a one acre plot out of the 85 acre farm devised by John to George, built a school building thereon and continued to use it for school purposes until 1945. Thereafter the school was closed, and the pupils transported to another building at another location. On August 28, 1948 the school board decided to sell the plot. Prior to the sale, however, defendant took possession of the land and padlocked the building claiming that the plot belonged to her. This action in ejectment was then brought against her by the school district.

She claims title as the sole surviving heir of Ida J. Boehmer who died intestate May 6, 1946, and who, prior to her death, had received a general warranty deed dated October 21, 1935 from George Pontius and wife for the 85 acre farm, included within the description of which was the one acre school plot.

The case was tried before, when the defendant contended that in 1894 George Pontius orally gave permission to the school district to use the plot in question for "so long as they were needed for a school and when they no longer needed such land for a school the same was to revert to the then owners of the (farm)."

This she attempted to prove through Willard Pontius, a son of George Pontius, now deceased. He testified that he was present when his father sold the farm to Ida J. Boehmer and that George then said that when the plot was no longer used for school purposes it would automatically become a part of the farm. This

testimony was clearly inadmissible. The lower court concluded as much, ignored it, and entered judgment non obstante veredicto. This court, upon appeal, held that the evidence having been admitted, even though improperly, it could not be ignored, and that a new trial rather than judgment non obstante veredicto was necessary. *Donegal Township School District v. Crosby,* 171 Pa. Superior Ct. 372, 90 A. 2d 341 (1952).

The defendant amended her pleadings, and offered to prove at the second trial, which is now before us, that John Pontius gave the farm to his son, George, upon the latter's marriage on June 29, 1884 and that George orally gave the plaintiff school district in 1889 or 1890 the use of the premises for school purposes only, and provided that it should revert when no longer used for those purposes.

She again offered to prove the alleged statements of George at the time of the conveyance to her mother. The court, as was decided when the case was before us the first time, properly refused to admit this testimony.

Defendant also attempted to introduce reputation evidence of title by asking several witnesses, "What have you heard old men, now deceased, say as to the reputation of the ownership of the title to the property described as the Pontius School Property?" To this question the court properly sustained an objection.

"Except in Maine and Massachusetts," says Professor Wigmore, "it has long been everywhere accepted in the United States as a legitimate application of the general principle, that reputation, so far as it definitely exists, may be admissible to prove the location of private boundaries. But this application of the principle is confined to reputation of boundaries. That *title* cannot be so evidenced is generally conceded." Wigmore on Evidence, Third Edition, Vol. 5, §1587 p. 454, 455.

Appellant's evidence shows that George Pontius was married June 29, 1884, that he and his wife went to housekeeping at the time of their marriage on the farm described in the will of John Pontius and that their children were born there. That is all. There is no evidence to support the appellant's contention that George gave the plot to the school district with the understanding that it would revert to him or his assigns. The deed executed by George to the appellant's mother describes the farm as having been given by John to George by will. There is no evidence from which the jury could find otherwise. But assuming George were in possession of—even had title to—the plot at the time the school house was built; would not the appellant ultimately be faced with the same presumption of grant no matter who had title to the plot when the school district took possession?

This brings us to the basic, and indeed the only question in this case worthy of serious consideration. It is whether a school district having no deed to a tract of land, and there being no evidence of how the district came into possession of it, can, after using it for school purposes for more than 55 years, retain title after the district has ceased to use it for school purposes, or whether title reverts to the successor in title of the owner at the time the school district took possession.

As one room school houses have vanished in the wake of consolidation, situations similar to this must have been passed upon by school solicitors and rural title searchers hundreds of times. Strange then it is that the precise question here presented seems never to have been brought before an appellate court of this Commonwealth. With some variations, it has been dealt with by at least five lower courts all of whom have decided in favor of the school districts. *Miller*

*v. Amity Township School District,* 21 D. & C. 479, (Berks Co.) (1934); *Susquehanna Township School District v. Burns,* 35 Dauph. 100 (1932); *Wyalusing Township School District v. Babcock,* 11 D. & C. 536 (Bradford Co.) (1928); *Dover School District v. Lauer,* 22 Dist. 102 (York Co.) (1912); *Springfield School District v. Rhodes,* 32 Del. 41 (1943).

Since the early days of the Commonwealth the doctrine of a presumptive grant has been recognized and sustained by our courts. *Kingston v. Lesley,* 10 S. & R. 383 (1824); *Taylor v. Dougherty,* 1 W. & S. 324 (1841); *Hastings v. Wagner,* 7 W. & S. 215 (1844); *Dougherty v. Welshans,* 233 Pa. 121, 130, 81 A. 997 (1911).

Application of this doctrine is not limited to an intruder without color of title. *Dougherty v. Welshans,* supra. Nor is possession by the claimant necessary. *Hastings v. Wagner,* supra.

This doctrine provides that after a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title during such period, the courts will presume whatever grant may be necessary to quiet the title. *Townsend v. Boyd,* 217 Pa. 386, 66 A. 1099 (1907).

"The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society." *Foulk v. Brown,* 2 Watts 209, 215 (1834). It is founded in necessity. *Wallace et al. v. The Fourth United Presbyterian Church of Pittsburgh,* 111 Pa. 164, 170, 2 A. 347 (1885). "These presumptions conduce to repose; and there is a growing tendency to encourage them not only here but elsewhere." *Hastings v. Wagner,* supra, p. 218.

In *Garrett v. Jackson,* 20 Pa. 331, 335 (1853) it was said: ". . . where one uses an easement whenever

he sees fit, without asking leave, and without objection, it is adverse, and an uninterrupted adverse enjoyment for twenty-one years is a title which cannot be afterwards disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with a claim of right by the other party."

It is contended by the appellant that the doctrine of presumptive grant is not applicable here because there is a presumption that the school district obtained the plot by eminent domain, and therefore did not get a fee simple title, but only a right to use and occupy the plot for the purpose for which it was taken.

Under the Act of April 9, 1867, P. L. 51 the school district when it condemned land got merely a right to use and occupy the land for school purposes, and when this use and occupancy ceased the title reverted to the original owner or those holding under him. *Lazarus v. Morris*, 212 Pa. 128, 61 A. 815 (1905). This was the rule between 1867 and 1911. Prior to 1867 school districts did not have the power of eminent domain. After 1911 the Act of May 18, 1911, P. L. 309, §§606 and 607 (now replaced by §722 of the Act of March 10, 1949, P. L. 30, 24 PS §7-722) gave the school districts a fee simple title to land obtained by condemnation.

During all this period the school district could obtain land by purchase and gift. In her pleadings the appellant alleges that the school district obtained the plot here in question, not by condemnation, but by an oral license given by George Pontius to use the premises for school purposes.

There is authority for the proposition that where the right of eminent domain exists in a corporation it cannot claim by adverse possession. This is on the theory that a corporation when it takes possession of land does not do so as a willful trespasser, whose trespass may grow into a title, but under its power of eminent domain. *Ontelaunee Orchards, Inc. v. Rothermel et ux.,* 139 Pa. Superior Ct. 44, 11 A. 2d 543 (1939).

It does not follow, however, that the doctrine of presumptive grant cannot be applied to any school district property obtained between 1867 and 1911. *Miller v. Amity Township School District,* supra; *Ontelaunee Orchards v. Rothermel,* supra.

When a school district is in exclusive possession of a plot of ground for over 55 years, and there is no evidence how it came into possession, we think that the rule of presumptive grant applies and the district has a fee simple title and after ceasing to use the plot for school purposes, still has the right to maintain an action of ejectment against one claiming title under a former owner of the plot.

It is common knowledge that deeds, and similar papers kept by members or officers of a school board are frequently lost. In rural communities "the school office" is often the secretary's pocket and "the safe" his table drawer. Records frequently do not pass from an officer to his successor. It is also reasonable to assume that farmers were happy to "give" part of their land providing the district would build a school house on it. The time it saved their children in traveling to and from school accounted for many chores, and more than compensated for the loss of so small a part of their land. Some may have intended that the land would revert, if it were no longer used for school purposes, but more likely most of them never gave the

contingency a thought. What then should happen in such case?

The courts have resolved the question generally in favor of the school district. See *Lee v. County School Board*, 132 S.E. 863 (Va.) (1926) and cases cited above. In some cases this may, as the appellant contends, be unfair to those who hold under a "giver" who in some instances may have intended that he would some day get back the land. On the other hand the rule we here adopted favors the public interest over the private interest; it is less likely to establish clouds upon the title to numerous tracts of land;[2] and it is probably only fair and reasonable to assume that the owner who "gave" the land received in one way or another what he believed to be a fair consideration for it.

And then, too, it is a fair assumption that the owner gave a deed to the school district which was lost through the many changes in officers and members of the board over a period of so many years.

Judgment affirmed.

Ross, J., took no part in the consideration or decision of this appeal.

---

[2] It is common knowledge among rural lawyers that in many instances the owners of these tracts could not be determined or located if the title did not remain in the school district.