## Weidner v. LeTort Regional Authority

*Wayne F. Shade*, for plaintiffs.
*Huzert Y. Gilroy*, for defendant.

SHEELY, *J.*, March 24, 1983—On May 19, 1982, plaintiffs filed a complaint in an action to quiet

title. After filing an answer with new matter on July 6, 1982, defendants, on August 20, 1982, by agreement of the parties, filed a counterclaim in ejectment. After various other pleadings, plaintiffs and defendant filed cross motions for summary judgment and stipulated to a number of facts. It was also agreed that defendant should be termed the moving party for the purpose of the local rules.

In ruling upon this motion several basic principles of law should be kept in mind. It is basic that summary judgment is only granted when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The record in such proceedings must be examined in the light most favorable to the non-moving party. See Amabile v. Auto Kleen Car Wash, 249 Pa. Super. 240, 376 A. 2d 247 (1977); Pa.R.C.P. 1035.

Plaintiffs derive their titles from a farm of approximately 300 acres which was purchased by John Noble prior to 1870 and which as known as the McClure Farm. The railroad's right-of-way was located over a portion of the Noble farm which is now owned by plaintiffs. Through various mergers and court proceedings the railroad changed hands several times but was utilized by various railroads continuously from its inception until 1972. It eventually became owned in 1945, by the Reading Company which formally abandoned it in 1976.

On November 10, 1978, by a Quitclaim deed, the Reading Company conveyed its interest in the roadbed to LeTort (Exhibit no. 2). It is the intention of LeTort to use the former railroad bed as a nature trail. In 1981, plaintiffs erected barriers at the intersections of the former railroad bed with the boundaries of their lands, thereby prohibiting access to the former railroad right-of-way as a nature

trail by both members of LeTort and members of the general public.

There are recorded documents of title into South Mountain Iron Company for certain portions of the purported conveyance to LeTort; but there are no documents of title, recorded or otherwise, for other portions including the lands now owned by plaintiffs. There is no evidence that plaintiffs or any of their predecessors in title gave consent for the construction of the railroad over the properties which are now the properties of plaintiffs. The Reading Company has maintained archives but they contain no documents concerning transactions of plaintiffs or their predecessors regarding the railroad right-or-way.

LeTort claims a fee simple interest in the tract under the theories of: presumption of lost deed or grant; continuous public use; or through adverse possession.

LeTort contends that, because there is no record of a conveyance from John Noble, plaintiffs' predecessor, to the South Mountain Iron Company, the court should presume a grant of a deed in fee simple into the South Mountain Iron Company at the time the railroad was constructed on Noble's property. After reviewing a goodly number of cases and treatises it becomes apparent that there are three major types of presumptions that arise under the doctrine of presumptive grant. First, there is a presumptive grant which operates as a conclusive and irrebutable presumption which would more accurately be called a rule of law than a mere presumption.

An action in ejectment is a possessory action which is proper for the recovery of the possession of land. Cooper v. Smith, 9 Serg. & Rawle 26, 11 Am. Dec. 658 (1822). The cause of action is the posses-

sion of land by one to the exclusion of another entitled to the possession of it. Rutherford Water Co. v. Harrisburg, 297 Pa. 33, 146 A. 113 (1929). Generally speaking, in order to maintain ejectment, plaintiff must have either a title to the lands with a present right of continued possession, Barndall v. Bradford Gas Co., 225 Pa. 338, 74 A. 207, 26 L.R.A. (N.S.) 614 (1909), or it must appear that he had actual bona fide possession of the lands, Wood v. Praul, 217 Pa. 293, 66 A. 528 (1907), that he was ousted from possession by defendant, and that he has an immediate right of possession. Dice v. Reese, 342 Pa. 379, 21 A. 2d 89 (1941). The moving party in an action at ejectment must recover on the strength of his own title rather than on the weakness of the non-moving party's title. Roberts v. Washington Trust Co., 313 Pa. 584, 170 A. 291, cert. denied, 292 U.S. 608 (1934); Burford v. McCrue, 53 Pa. 427 (1866).

The action to quiet title is designed to determine a dispute over the title to real estate of which the moving party is in possession. Seven Springs Farm v. King, 235 Pa. Super. 450, 344 A. 2d 641 (1975). A person in possession is able to compel a person out of possession to assert his title by bringing an action of ejectment, or be barred from subsequently attacking the title of the person in possession. Clark v. Clark, 255 Pa. 574, 100 A. 457 (1917). It provides a speedy means for one in possession of land claiming title thereto to obtain a final judgment as to the validity of his title against an adverse claimant. Kimmel v. Shaffer, 219 Pa. 375, 68 A. 1017 (1908).

The facts of the case have been set forth in detail in a formal stipulation of facts in lieu of trial. These facts may be summarized as follows:

Plaintiffs are owners and residents of single family homes fronting on Highland Avenue in the

Borough of Carlisle. Defendant LeTort Regional Authority (hereinafter LeTort) is a municipal authority organized for the purposes of flood control and recreation under the sponsorship of Cumberland County, North Middleton Township, the Borough of Carlisle, and South Middleton Township. The parties dispute the ownership of a former railroad bed which runs adjacent to the property of plaintiffs. The tract of land in dispute is an area approximately 40 feet in width with a length of approximately 850 feet.

In 1869, the South Mountain Railroad was built or completed by the South Mountain Iron Company, extending from Carlisle to Pine Grove Furnace, a distance of 17½ miles. History of Cumberland and Adams Counties, Pennsylvania, part II, at 77 (1886). The railroad was constructed under the authority of various general and special acts of assembly including: Act of June 17, 1870, P.L. 951; Act of April 17, 1870, P.L. 1451 (appendix); Act of February 13, 1867, P.L. 165; Act of February 28, 1865, P.L. 245; and Act of April 23, 1864, P.L. 582.

This presumption is based upon the concept of adverse possession and could conceivably be used to confer a fee simple title in South Mountain Iron Company and its eventual successor LeTort through the operation of a statute of limitations. Secondly, there is a common law doctrine of presumptive grant which does not operate in a manner similar to that of the statutory period for adverse possession. Rather, it operates on true presumptions and inferences which are not conclusive and may be rebutted. This also could conceivably be used to presume a grant in fee simple to LeTort. Thirdly, there is a form of presumptive grant that deals with the doctrine of prescription as it relates to presuming grants of easements. Prescription,

however, would not operate to confer a fee simple title on LeTort. At most it would only confer a right-of-way which would then revert on cessation of use to plaintiffs.

Thus, of the available doctrines of presumptive grant, only the first or second could conceivably operate to confer a fee simple title on LeTort.

We first address that doctrine of presumptive grant which operates on the basis of adverse possession. The doctrine of adverse possession fixes a period of time beyond which the owner of land is not privileged to bring an action to oust the adverse possessor, nor is he permitted to undertake self-help to oust such possessor. In the United States, not only is action to recover possession barred, title is also transferred to the adverse possessor. Thus adverse possession provides a method for transferring interests in land without the consent of the prior owner and even in spite of the dissent of that prior owner.

To utilize the doctrine of adverse possession in Pennsylvania, the party asserting it must establish the possession of another's land for 21 years that is: (1) hostile and under a claim of right; (2) exclusive; (3) open and notorious; (4) actual; and (5) continuous for the requisite period. In addition, the owner must have notice of such adverse claim by the possessor and such possession must be shown by clear and convincing evidence. 1 P.L.E. Adverse Possession (1957); 7 R. Powell, The Law of Real Property § 1012-1018 (Rohan rev. ed. 1982); 5 G. Thompson, Commentaries on the Modern Law of Real Property § 2540 (Grimes ed. 1957); Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. § 5530 and numerous predecessors acts.

To determine whether adverse possession and

this conclusive type of presumption can apply to the instant case it is necessary to determine whether the railroad here involved was capable of maintaining adverse possession. If it was not, this type of presumptive grant cannot apply.

LeTort argues that its predecessor was entitled to maintain adverse possession. To support this proposition it cites a number of cases dealing with school districts. LeTort points out that despite having a power of eminent domain, school districts are permitted to maintain adverse possession and to obtain a fee simple title thereby. LeTort thus reasons that railroads, too, despite having a power of eminent domain, should also be permitted to acquire fee simple titles through adverse possession.

A close examination of cases involving school districts, however, shows that this only is true under certain circumstances and for possessions which began between 1867 and 1911. It is not a general rule that a school district can obtain a fee simple by adverse possession. A reading of the following sampling of school district cases should explain why this is not a general rule: Lazarus v. Morris, 212 Pa. 128, 61 A. 815 (1905); Donegal Township School District v. Crosby, 178 Pa. Super. 30, 112 A. 2d 645 (1955); Ontelaunee Orchards, Inc. v. Rothermel, 139 Pa. Super. 44, 11 A. 2d 543 (1939); Buckingham Township School District v. Large, 15 D. & C. 2d 528 (1957); Dover School District, 22 D. 102, 25 York 165 (1912). See also for an explanation of the differences in the old statutory eminent domain acts, Wyalusing School District v. Babcock, 11 D. & C. 536 (1928). See also the annotation accompanying S. Francis, Pennsylvania School Law § 722 (1982) as to fee simple titles. See also various pamphlet law statutes which

are listed at 24 P.S. § 7-722. They differ in varying degrees from those statutes which authorize railroads to use powers of eminent domain.

Mainline railroads in Pennsylvania were generally incorporated by special act. Such special acts granted powers of eminent domain. See for example the act incorporating the Pennsylvania Railroad Company, Act of April 13, 1846, P.L. 312, especially § § 11, 12, 21 and the supplementary Act of March 27, 1848, P.L. 273 which follows it. See also the General Railroad Laws Acts of February 19, 1849, P.L. 79 and of April 4, 1868, P.L. 62 which were enacted to govern special railroad acts. Those acts which deal specifically with the South Mountain Iron Company and its railroad are: Act of April 23, 1864, P.L. 582; Act of February 28, 1865, P.L. 245; and Act of April 17, 1869 (in appendix 1869, found in 1870 volume), P.L. 1451. A careful reading of these acts shows that they differ from those acts granting eminent domain to school districts in several respects including the types of title and interest in land which can be taken under various sorts of proceedings. For that reason a railroad's capacity to obtain a fee simple title should be judged according to cases which relate to these acts rather than those which relate to the school district acts.

To apply the present presumption based on adverse possession it is necessary to determine whether a railroad can hold adversely. It is a general proposition that a railroad cannot hold adversely because it is assumed that one having the power of eminent domain has taken possession by virtue of that right and not as a trespasser. Sayre Land Company v. Borough of Sayre, 5 D. & C. 2d 294 (1955), aff'd 384 Pa. 534, 121 A. 2d 579 (1956);

Harding v. Seeley, 148 Pa. 20, 22 (1892); 1 Ladner on Conveyancing in Pennsylvania, § 10.01 (rev. 4th ed. 1979).

There are a few cases which hold that a railroad can acquire fee simple title through adverse possession but these involve previous adverse possessors who later sold their interests to railroads who then tacked onto the previously existing adverse possession. For example, see Covert v. Pittsburgh & Western Railway Company, 204 Pa. 341, 54 A. 170 (1903), overruling 18 Pa. Super. 541 (1901). LeTort has also pointed to Carter v. Ridge Turnpike Co., 22 Pa. Super. 162 (1903) aff'd on other grounds 208 Pa. 565, 57 A. 988 (1904). However, a close reading of the Act of January 26, 1849, P.L. 10 shows that turnpike companies were expressly authorized to obtain fee simple titles. LeTort also cites Coxe v. Lehigh Valley Railroad Company, 46 Luz. L.R. 211 (1956), which adopted the views expressed in Donegal Township School District v. Crosby, 178 Pa. Super. 30, 112 A. 2d 645 (1955), which held a school district with the power of eminent domain could acquire a fee simple title. However, in Donegal the possession was not affirmed per curiam at 398 Pa. 424, 152 A. 2d 782 (1960), it was on a separate opinion that had been handed down later by P. J. Aponick and which can be found at 20 D. & C. 2d 111 (1958). Also, as we have already pointed out, the eminent domain statutes for railroads differ from those for school districts.

We now consider the second category of presumptive grant which operates on true presumptions or inferences which may be rebutted. As a general rule a long continued peaceable possession, accompanied by the usual acts of ownership justifies a presumption of a lost grant of the prop-

erty to the occupant. This presumption operates to supply the place of positive proof of an ancient grant and generally arises as a matter of policy because of the difficulty sometimes encountered in preserving or locating old records of title. Where adverse possession would not apply, as it does not in this case, the presumption is not affected by the statutory period.

However, if the surrounding circumstances are consistent with the non-existence of such a grant, in this case of a fee simple, the presumption of such a grant will not arise. Ricard v. Williams, 20 U.S. (7 Wheat.) 59 (1822); Ransdale v. Grove, 4 McLean 282, 20 F.Cas. 281, No. 11, 570 (C.C.D. Ohio) (1847); see also Farr v. Swann, 2 Pa. 245 (1845).

In this instance, we have railroad acts which grant limited powers of eminent domain and which have been strictly construed by our courts. Additionally, railroads generally have corporate archives and records in established business offices. Although those records in the instant case show a number of deeds were in fact conveyed to the railroad by various predecessors of the neighbors of plaintiffs, there are also other missing deeds beside those relating to the John Noble farm of plaintiffs' predecessor. Those deeds which are available for inspection are for the most part not fee simple deeds in any event. LeTort has given no convincing reason why this conveyance, if one was made, should not have been a mere base or conditional fee or a mere right-of-way which would revert to the original owners or their successors in title on cessation of use for railroad purposes. Pennsyvania Schuylkill Valley Railroad v. Reading Paper Mills, 149 Pa. 18, 24 A. 205 (1892). For those reasons we decline

to find that a presumption of a lost grant of a fee simple is warranted.

As already explained, there is a third type of presumptive grant which operates on the theory of prescription. Again, it would at most lead to a presumption of a limited right in the use of the land for railroad purposes. Such right would revert to plaintiffs on cessation of use for railroad purposes. Thus, all that is necessary to find that a reversion of the interest has returned to plaintiffs is to find a cessation of use for railroad purposes.

LeTort, to prevent such a finding on our part, argues that there is no real cessation of use because the uses of LeTort and the railroad are in reality so similar that there is a continuation of a public use. After reviewing the principal cases of this subject and comparing the eminent domain powers given to LeTort under Act of May 2, 1945, P.L. 382, §11, 53 P.S. §314, we are of the opinion that a railroad has only a limited public trust and use. It is so different from the use being contended for by LeTort to require a finding of no continuation of public use. See Pittsburgh & Lake Erie Railroad Company v. Bruce, 102 Pa. 23 (1882); Olympian Sportsmen, Inc. v. Erie-Lackawanna Railway Co., 47 D. & C. 2d 90 (1968). Accordingly, we find that the interest in this land has reverted to plaintiffs as successors in title to Noble.

## ORDER OF COURT

And now, March 24, 1983, for the reasons appearing in the opinion filed this date, defendant's motion for summary judgment is denied and plaintiffs' motion for summary judgment is granted. The interest in the property reverts to plaintiffs.