581 A.2d 652

**Peter BARTER, Appellee,**

v.

**PALMERTON AREA SCHOOL DISTRICT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1990.

Filed Oct. 24, 1990.

18

James A. Wimmer, Palmertown, for appellant.

Michael A. Henry, Allentown, for appellee.

Before CAVANAUGH, WIEAND and HUDOCK, JJ.

WIEAND, Judge:

In this action to recover a deposit made pursuant to the terms of a contract for the sale of real estate, the trial court determined that the seller's title was unmarketable as a matter of law and entered summary judgment in favor of the buyer for the deposit which he had made. After careful review, we reverse and remand for further proceedings.

Peter Barter is the assignee of Frank J. Horwith, who purchased at public sale, on October 1, 1988, the Delaware School Property on Delaware Avenue in Palmerton, Carbon County. The written agreement contained a provision that if the Palmerton Area School District could not deliver marketable title to the school property, the deposit of $23,-500.00 (ten percent of the purchase price of $235,000.00) would be returned to the purchaser.[1] Alleging that the School District did not have marketable title to the school property, Barter refused to accept a deed and demanded a refund of his deposit. When the refund was not forthcoming, he commenced an action at law to recover the same. The School District filed an answer in which it denied that

1. Closing was to be held on November 15, 1988, but time was not made of the essence.

its title was unmarketable and alleged that Barter had breached the contract by refusing to close. After Barter had filed a reply to the new matter contained in the School District's answer, he filed a motion for summary judgment. In response, the School District filed an affidavit containing facts not appearing in the pleadings. These facts were not denied by a countervailing affidavit.

The pleadings disclose that the Delaware School consisted of lots 6, 8, 10, 12, 14, 16, 18, 20, 22 and 24 Delaware Avenue (400 × 190) on Plan of Palmer Land Company, a subsidiary of the New Jersey Zinc Company.[2] It was the Palmer Land Company which had developed the Borough of Palmerton, and all titles to land in the Borough chain back to the Palmer Land Company. The school district's predecessor, the School District of the Township of Lower Towamensing, purchased lots 18, 20, 22 and 24 from Palmer Land Company in June, 1908. The deed, however, was not recorded and is now lost. The remaining lots were purchased from the Palmer Land Company by deeds dated March 26, 1921 and August 2, 1927. These deeds were duly recorded.

Unsigned copies of the deeds for lots 18, 20, 22 and 24 were found in the records of Horsehead Industries, Inc., the successor to Palmer Land Company, and were made available to Barter prior to the closing date. Quitclaim deeds were requested and were being prepared when the date of closing arrived.[3] Between 1908 and the date of sale on October 1, 1988, a school building was situated on the lots in question, and subsequently acquired property was enclosed by fencing. The property was used continuously for school purposes without any claims being asserted against the title. Finally, the School District asserted, Barter had refused to accept title for economic reasons and not because of any alleged defect in the title.

2. The New Jersey Zinc Company and its subsidiary, the Palmer Land Company, are now, by merger, a part of Horsehead Industries, Inc.

3. We were told at argument that these quitclaim deeds were subsequently executed and delivered, and the school property resold.

A marketable title is one that is free from liens and encumbrances and "which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and ready to perform his contract, would, in the exercise of that prudence which businessmen ordinarily bring to bear upon such transactions, be willing to accept and ought to accept." 77 Am.Jur.2d Vendor and Purchaser, § 131 (1975). A title is not marketable if it is such that the grantee may be exposed to the hazard of a lawsuit. *LaCourse v. Kiesel*, 366 Pa. 385, 77 A.2d 877 (1951); *Bonebrake v. Koons*, 333 Pa. 443, 5 A.2d 184 (1939). However, where there is no color of outstanding title which might prove substantial, and there is no reasonable doubt either at law or in fact concerning the title, the mere possibility of some future litigation concerning it does not prevent the title from being good and marketable. *Rice v. Shank*, 382 Pa. 396, 115 A.2d 210 (1955).

A break in the chain of the vendor's title caused by an unrecorded deed which has been lost is calculated to raise the doubts of a reasonably prudent person and, in the absence of explanation, is enough to render his title unmarketable. 77 Am.Jur.2d Vendor and Purchaser, § 151 (1975). See: *Ewing v. Plummer*, 308 Ill. 585, 140 N.E. 42 (1923); *Irving v. Campbell*, 121 N.Y. 353, 24 N.E. 821 (1890). However, it has also been held that where the land, for which an unrecorded deed which has been lost or destroyed, has continued in the possession of the vendor for a long period of time, the purchaser may be compelled to accept the title. *Wade's Heirs v. Greenwood*, 41 Va. 497 (1843). Moreover, a title depending on adverse possession may constitute a title that is not only good but also marketable. *Medusa Portland Cement Co. v. Lamantina*, 353 Pa. 53, 44 A.2d 244 (1945); *Smith v. Windsor Manor Co.*, 352 Pa. 449, 43 A.2d 6 (1945).

Appellee contends that the School District cannot acquire title by adverse possession because, being a municipal body having the power of eminent domain, the law presumes that it has acquired title by eminent domain. See:

*Hoover v. Jackson,* 362 Pa.Super. 532, 536 n. 2, 524 A.2d 1367, 1369 n. 2 (1987) (citing *Ontelaunee Orchards, Inc. v. Rothermel,* 139 Pa.Super. 44, 52–53, 11 A.2d 543, 546–547 (1940)). The presumption, however, can be rebutted by evidence showing that the entry was made other than through exercise of the power of eminent domain. *Id.* Closely related to adverse possession is the doctrine of a presumptive grant. This doctrine is recognized in Pennsylvania. See: *Donegal Township School District v. Crosby,* 178 Pa.Super. 30, 35, 112 A.2d 645, 647 (1955). The "doctrine provides that after a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title during such period, the courts will presume whatever grant may be necessary to quiet title." *Id.*

 In the instant case, a school building had existed for more than seventy-five (75) years on the lots conveyed by the unrecorded deed. The entire school property, moreover, had been enclosed by fencing. The pleadings and the facts recited in appellant's affidavit disclose that the school district acquired title, not by eminent domain, but by purchase. This is confirmed by the records of the original grantor, who not only acknowledged the conveyance but agreed to give the school district a quitclaim deed for the lots described in the unrecorded deed. It is apparent, therefore, that upon a trial the school district may be able to prove a title which is not only good but marketable as well. In view of the facts now appearing of record, the appellant school district must at least be given an opportunity to prove that its title was good and marketable. It must be given an opportunity to explain the unrecorded deed and establish its title. We hold, therefore, that when the record is viewed in the light most favorable to the non-moving party, as we are required to do, there remain issues of undetermined fact and that the trial court's summary holding that appellant's title was unmarketable as a matter of law was erroneous.

Reversed and remanded for further proceedings. Jurisdiction is not retained.